☑ Original      ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>a White Apple iPhone with a hard gray/black<br>plastic "UAG" case, with an unknown Serial<br>Number | )<br>)<br>)<br>)<br>)<br>)<br>)    Case No.24-913M(NJ) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ Eastern _____ District of _____ Wisconsin _____
*(identify the person or describe the property to be searched and give its location):*

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before 10/1/2024 _____ *(not to exceed 14 days)*

☐ in the daytime 6:00 a.m. to 10:00 p.m.    ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ Honorable Nancy Joseph _____ .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☐ for _____ days *(not to exceed 30)*    ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued: 9/17/2024 @ 9:39 a.m. _____

_____
*Judge's signature*

City and state:    Milwaukee, Wisconsin _____

Honorable Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

       I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____

*Executing officer's signature*

_____

*Printed name and title*

**ATTACHMENT A**
**PROPERTY TO BE SEARCHED**

The property to be searched includes a White Apple iPhone with a hard gray/black plastic "UAG" case, with an unknown Serial Number ("**Subject Device**") having a wallpaper photo of CHESTNUT in front of Rolls Royce vehicle.

The **Subject Device** is currently located at the Milwaukee FBI office, 3600 S Lake Dr, St. Francis, WI 53235, located in the State of Wisconsin.

**ATTACHMENT B**
**ITEMS TO BE SEIZED**

1.      All records on the Subject Device described in Attachment A that relate to

violations of Title 21, United States Code, Sections 841 and 846, including but not

limited to:

  a.   lists of customers and related identifying information;

  b.   types, amounts, and prices of drugs trafficked as well as dates, places, and
       amounts of specific transactions;

  c.   any information related to public corruption of a Police Officer;

  d.   any information related to distribution of drugs (including names,
       addresses, phone numbers, or any other identifying information);

  e.   any information recording the schedule or travel of Dromynique
       Chestnut;

  f.   all bank records, checks, credit card bills, account information, and other
       financial records;

  g.   photographs, videos or any other multimedia platform.

2.      Evidence of user attribution showing who used or owned the Subject

Device at the time the things described in this warrant were created, edited, or deleted,

such as logs, phonebooks, saved usernames and passwords, documents, and browsing

history;

3.      Records evidencing the use of the Internet Protocol address to

communicate with using the internet including:

  a.   records of Internet Protocol addresses used;

  b.   records of Internet activity, including firewall logs, caches, browser
       history and cookies, "bookmarked" or "favorite" web pages, search terms

17

that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

18

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

a White Apple iPhone with a hard gray/black plastic
"UAG" case, with an unknown Serial Number

)
)
)
)
)
)

Case No. 24-913M(NJ)

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A.

located in the _____ Eastern _____ District of _____ Wisconsin _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841 and 846 | Distribution of controlled substances; possession of controlled substances with the intent to distribute; conspiracy to distribute controlled substances |

The application is based on these facts:

See Attached Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

FBI TFO Nesrodene Ghassoul
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone _____ *(specify reliable electronic means).*

Date: 9/17/2024

_____
*Judge's signature*

City and state:  Milwaukee, Wisconsin

Honorable Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF AN
## APPLICATION FOR A SEARCH WARRANT

I, Nesrodene Ghassoul, being first duly sworn, hereby depose and state as follows:

### BACKGROUND

1.      I am a Police Officer with the City of Milwaukee Police Department and have been since July 2015.  As of December 2019, I've been assigned and attached as a Federally Deputized Task Force Officer (TFO) with the Federal Bureau of Investigation's (FBI) Milwaukee Area Safe Streets Task Force (MASSTF).  I am an investigator or law enforcement officer of the United States within the meaning of 18 U.S.C. Section 2510(7), in that I am empowered by the law to conduct investigations of and to make arrests for federal felony arrests.

2.      As a Police Officer and a Task Force Officer, I have participated in the investigation of narcotics and illegal firearm related offenses, resulting in the prosecution and conviction of individuals and the seizure of illegal drugs, weapons, United States currency and other evidence of criminal activity.  As a narcotics and illegal firearm possession investigator, I have interviewed many individuals involved in drug and firearm trafficking and have obtained information from them regarding the acquisition, sale, importation, manufacture, and distribution of controlled substances and firearms. Through my training and experience, I am familiar with the actions, habits, traits, methods, and terminology utilized by the traffickers and abusers of controlled substances and illegal firearm possession.  I have participated in all aspects of drug and firearm

1

investigations, including physical surveillance, execution of search warrants, undercover operations, analysis of phones and the arrests of numerous drug and firearms traffickers. I have also been the affiant of many search warrants.

3.      The facts in this affidavit come from my training and experience, my review of documents and information obtained from other agents/law enforcement officers. This affidavit is intended to show merely that there is probable cause for the requested warrant and does not set forth all my knowledge about this matter.

4.      Based on my training, experience, and participation in drug trafficking investigations, I know and have observed the following:

        a.      I have learned about the manner in which individuals and organizations distribute controlled substances in Wisconsin as well as in other areas of the United States;

        b.      I am familiar with the coded language utilized over the telephone to discuss drug trafficking and know that the language is often limited, guarded and coded. I also know the various code names used to describe controlled substances;

        c.      I know large-scale drug traffickers often purchase and/or title their assets in fictitious names, aliases or the names of relatives, associates or business entities to avoid detection of these assets by government agencies. I know that even though these assets are in the names other than the drug traffickers, the drug traffickers actually own and continue to use these assets and exercise dominion and control over them;

        d.      I know large-scale drug traffickers must maintain on-hand, large amounts of U.S. currency in order to maintain and finance their ongoing drug business;

2

e.     I know that large-scale drug traffickers will frequently use firearms to protect their narcotics, proceeds, and persons, since such drug traffickers are reticent to involve law enforcement in their affairs;

f.     I know it is common for persons involved in large-scale drug trafficking to maintain evidence pertaining to their obtaining, secreting, transfer, concealment and/or expenditure of drug proceeds, such as currency, financial instruments, precious metals and gemstones, jewelry, books, records of real estate transactions, bank statements and records, passbooks, money drafts, letters of credit, money orders, passbooks, letters of credit, bank drafts, cashier's checks, bank checks, safe deposit box keys and money wrappers. These items are maintained by the traffickers within residences, businesses or other locations over which they maintain dominion and control;

g.     I know it is common for drug traffickers to maintain books, records, receipts, notes ledgers, airline tickets, receipts relating to the purchase of financial instruments and/or the transfer of funds and other papers relating to the transportation, ordering, sale and distribution of controlled substances. That the aforementioned book, records, receipts, notes, ledger, etc., are maintained where the traffickers have ready access to them;

h.     It is common practice for individuals who are involved in business activities of any nature to maintain books and records of such business activities for lengthy periods of time.  It is also common practice for individuals who maintain these

3

records to keep them in places that are secure but easily accessible such as in their businesses, offices, or personal residence.

       i.     It is also common that individuals who are attempting to conceal their true income from the IRS will maintain records that will establish their true ownership of assets or other expenditures in a secret manner. These records have included bank records, automobile titles, property deeds, cashier's check receipts, money order receipts, wire transfer receipts, documents pertaining to storage facilities or safe deposit boxes, documents or agreements detailing the true ownership of assets, photographs of the true owners with the concealed assets, or other items such as sales receipts, purchase orders, or shipping invoices.

       j.     I know large-scale drug traffickers often use electronic equipment such as telephones, pagers, computers, telex machines, facsimile machines, currency counting machines and telephone answering machines to generate, transfer, count, record and/or store the information described in the items above, as well as conduct drug trafficking activities;

       k.     I know when drug traffickers amass large proceeds from the sale of drugs, the drug traffickers attempt to legitimize these profits through money laundering activities. To accomplish these goals, drug traffickers utilize the following methods, including, but not limited to: domestic and international banks and their attendant services, securities brokers, professionals such as attorneys and accountants, casinos, real estate, shell corporations and business fronts and otherwise legitimate businesses which generate large quantities of currency;

4

l.	I know drug traffickers commonly maintain addresses or telephones numbers in books or papers which reflect names, addresses and/or telephone numbers of their associates in the trafficking organization; and

m.	I am familiar with computers, cellular telephones, pagers and their uses by drug traffickers to communicate with suppliers, customers, and fellow traffickers and by those engaged in money laundering activities to communicate with their associates and financial institutions; That drug traffickers use these devices to record their transactions and aspects of their lifestyle related to drug dealing, whether in the form of voicemail, email, text messages, video and audio clips, floppy disks, hard disk drives, flash drives, CD's, DVD's, optical disks, Zip disks, flash memory cards, Smart media and any data contained within such computers or cellular telephones, electronic storage media and other settings particular to such devices; I know that such devices automatically record aspects of such communications, such as lists of calls and communications, and any particularized identification assigned to those source numbers or email addresses by the owner of the devices;

n.	Specifically, I know the following information can be retrieved to show evidence of use of the computer to further the drug trade and/or money laundering activities; Computer systems and cellular telephones, including but not limited to system components, input devices, output devices, data storage devices, data transmission devices, and network devices and any data contained within such systems; and computer media and any data contained within such media and other material relating to computer systems and the internet including but not limited to, documentation, operating system

5

software, application or access program disks, manuals, books, brochures, or notes; and computer access codes, user names, log files, configuration files, and passwords, screen names, email addresses, IP addresses and cellular / wireless telephones, SIM cards, any removable storage devices for telephones, and any data contained therein, including but not limited to stored telephone numbers, recently called numbers list, text messages, digital audio and/or video recordings, pictures, settings, and any other user defined settings and/or data.

5.      This affidavit is submitted in support of an application for a search warrant seeking authorization to examine one electronic device, described more fully in Attachment A and currently in law enforcement's possession, and the extraction from those devices of electronically stored information, described more fully in Attachment B. Law enforcement believes such electronically stored information will constitute evidence of (i) distribution, and possession with intent to distribute, of controlled substances; and (iii) conspiracy to distribute controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

6.      The property to be searched includes a White Apple iPhone with a hard gray/black plastic "UAG" case, with an unknown Serial Number ("**Subject Device**") having a wallpaper photo of CHESTNUT in front of Rolls Royce vehicle. The **Subject Device** is currently located at the Milwaukee FBI office, 3600 S Lake Dr, St. Francis, WI 53235, located in the State of Wisconsin.

7.      The applied-for warrant would authorize the forensic examination of the

6

**Subject Device** for the purpose of identifying electronically stored data particularly described in Attachment B.

<u>**PROBABLE CAUSE**</u>

8.      On September 6, 2024, at approximately 3:10pm, Iowa State Police observed a 2020, Mercedes Benz Sprinter 3500, bearing California license plate 8XML793, travelling eastbound on US Interstate 80.  The vehicle was stopped and a Police K9 alerted on the vehicle for the presence of narcotics.  The driver, identified as Dromynique CHESTNUT, black male (DOB 7/17/1993), was removed from the vehicle.  A loaded handgun was found in the front of the vehicle with the driver.  CHESTNUT gave a personal phone number of 213-712-2423 (**Target Device**).

9.      An initial search of the vehicle revealed several bags of what appeared to be methamphetamine and with several additional bags to search, the vehicle was taken to a DOT building to complete the search.  At the completion of the search, the Troopers discovered a total of 24-kilogram bundles of cocaine, and approximately 100 pounds of suspected methamphetamine.  A picture is set forth below.



10.     An on-scene Mirandized interview of CHESTNUT was completed by law enforcement, and he stated he was hired by another individual to drive boxes of clothing from Essex Apartments in Santa Ana, California to 2857 N 26th Street, Milwaukee, WI. CHESTNUT provided the phone number 626-654-9974 for the phone number for the person who hired him. When CHESTNUT was confronted about the drugs in the van, CHESTNUT made a statement consistent with the assumption that the items recovered were cocaine.

11.     CHESNUT gave investigators consent to search his phone and provided his pin to access it. Investigators conducted a cursory search of the phone and discovered that the phone was sharing its live location with 626-654-9974 . The phone was placed in airplane mode and stored in evidence.

8

12. Between September 6, 2024, at 8:07pm and September 7, 2024, at 12:40am, 626-654-9974 attempted to call CHESTNUT multiple times.

13. I know that due to training and experience, that the amount of controlled substances recovered during the above referenced traffic stop is consistent with large level trafficking and the amount seized hold an estimated street value between $783,392.00 and $1,386,000.00.

## TECHNICAL TERMS

14. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing

9

and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

10

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can

11

store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

g. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

15. Based on my training, experience, and research, and from consulting the manufacturer's advertisements and product technical specifications available online at www.samsung.com, I believe that the Subject Devices have capabilities that allow them

12

to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

16.     Based on my knowledge, training, and experience, I know that electronic devices – like the Subject Device -- can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on such devices.  This information can sometimes be recovered with forensics tools.

17.     *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Subject Devices were used, the purpose of their use, who used them, and when.  There is probable cause to believe that this forensic electronic evidence might be on the Subject Devices because:

        a.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

18. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Subject Devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium,

that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

19.     *Manner of execution.*  Because this warrant seeks only permission to examine Subject Devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

<u>**CONCLUSION**</u>

20.     Based on CHESTNUT's consent on-scene, law enforcement can likely perform the requested extraction without additional legal process. I nevertheless submit this affidavit, which I believe supports probable cause for a search warrant authorizing the examination of the Subject Device described in Attachment A to seek the items described in Attachment B, out of an abundance of caution.

**ATTACHMENT A**
**PROPERTY TO BE SEARCHED**

The property to be searched includes a White Apple iPhone with a hard gray/black plastic "UAG" case, with an unknown Serial Number ("**Subject Device**") having a wallpaper photo of CHESTNUT in front of Rolls Royce vehicle. The **Subject Device** is currently located at the Milwaukee FBI office, 3600 S Lake Dr, St. Francis, WI 53235, located in the State of Wisconsin.

16

## ATTACHMENT B
## ITEMS TO BE SEIZED

1.      All records on the Subject Device described in Attachment A that relate to violations of Title 21, United States Code, Sections 841 and 846, including but not limited to:

  a.   lists of customers and related identifying information;

  b.   types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

  c.   any information related to public corruption of a Police Officer;

  d.   any information related to distribution of drugs (including names, addresses, phone numbers, or any other identifying information);

  e.   any information recording the schedule or travel of Dromynique Chestnut;

  f.   all bank records, checks, credit card bills, account information, and other financial records;

  g.   photographs, videos or any other multimedia platform.

2.      Evidence of user attribution showing who used or owned the Subject Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

3.      Records evidencing the use of the Internet Protocol address to communicate with using the internet including:

  a.   records of Internet Protocol addresses used;

  b.   records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms

that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

18